John HICKS, Plaintiff,

v.

CLYDE FEDERAL SAVINGS & LOAN, V.J. Musselman, Sylvia A. Miedema, Robert W. Ropa, Ernest A. Melichar, Ervin Kucera, Lydia Franz, Nicholas Lash, and Steven A. Kuroski, Defendants.

No. 87 C 8593.

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1988.

John Kevin Kneafsey, John Kevin Kneafsey, P.C., Chicago, Ill., for plaintiff.

George W. Groble, John P. Burke, Groble & Groble, Ltd., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This order concerns defendants' motion to dismiss all three counts of the complaint[1] filed by plaintiff John Hicks. For the reasons stated herein, defendants' motion is granted with respect to Counts I and III but partially denied with respect to Count II.

The first count of Hicks' complaint asserts a breach of contract claim against Clyde Federal Savings & Loan ("Clyde Federal") and Sylvia Miedema, Clyde Federal's chairperson. Hicks claims that he entered into an employment contract with Clyde Federal through Miedema and that, in violation of the terms of the contract, Miedema and Clyde Federal fired him. In his memorandum in opposition to defendants' motion to dismiss, Hicks concedes that under Illinois law there is a presumption that an employment relationship is terminable at will and not contractual. Hicks argues, however, that the Clyde Federal employee handbook, which Hicks attached to his complaint as Exhibit 1, "alter[ed] his status as an at-will employee" and created a contractual relationship between himself and Clyde Federal.

The court disagrees. In *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), the Illinois Supreme Court held that an employee handbook can be contractually binding on an employer only if three elements are present. The court stated:

First, the language of the [hand book] must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer.

Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. 106 Ill.Dec. at 12, 505 N.E.2d at 318.

In the instant case, the Clyde Federal handbook does not meet part one of the *Duldulao* test. Although Hicks is vague both in his complaint and in his memorandum regarding what language in the handbook he believes created his alleged contractual right to employment, Hicks alludes to the following two paragraphs in the handbook for support:

### PROBATIONARY PERIOD

The first three months of your employment will be a probationary period. This is to determine whether your interests and talents are adapted to our business. If in light of your abilities and temperament, you are not suited to savings and loan work, we should both discover it as soon as possible. During the three months probationary period, all employees are subject to salary deductions in the case of absenteeism. During the probationary period, all employees will be paid through the date on which time sheets have been submitted. After the three month probationary period, full time employees will be paid through the pay period ending date.

### TERMINATION

If you decide to terminate your employment for any reason, you are asked to give us at least two weeks' notice. Likewise, if lack of work or other circumstances beyond our control make it necessary to terminate your employment, we will give you two weeks' notice. However, the Association reserves the right to discharge an employee without notice for insubordination, unsatisfactory performance of work, or infraction of rules. During the three months' probationary period, staff members may be dismissed without notice regardless of the reason.

---

1. The complaint filed by Hicks on October 1, 1987, is the only pleading properly before the court. The purported "amended complaint" attached to Hicks' memorandum has no legal significance. Hicks has not requested and has not been granted leave to file an amended complaint.

In the context of defendants' motion to dismiss, this language must be read in the light most favorable to Hicks. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977). Nevertheless, where plaintiff's cause of action arises out of an alleged contract which is attached to the complaint as an exhibit, and such attachment shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate. *Goodman v. Board of Trustees Community College District 524*, 498 F.Supp. 1329, 1337 (N.D.Ill.1980); *Jacksonville Newspaper Printing Pressmen and Assistants' Union No. 57 v. Florida Publishing Co.*, 340 F.Supp. 993, 995 (M.D.Fla.1972), *aff'd*, 468 F.2d 824 (5th Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973).

■ The court finds that the Clyde Federal handbook shows unambiguously on its face that plaintiff's breach of contract claim cannot stand. The above-cited paragraphs of the handbook by themselves do not contain clear enough promissory language which could lead Hicks to reasonably believe that an offer was made. *Cf. Hights v. International Harvester Co.*, 675 F.Supp. 418, 425 (N.D.Ill.1987). In addition, Hicks does not point out and the court does not find any other language in the handbook which creates enforceable contractual rights. Thus, Hicks cannot satisfy part one of the *Duldulao* test. His claim for breach of contract must be dismissed in its entirety.[2]

■ Likewise, Count III of Hicks' complaint, which alleges tortious interference with contractual right against various individual defendants, also must be dismissed. Since the court finds no contractual right existed, defendants cannot be held liable for tortious interference with contractual right.

However, Count II of Hicks' complaint, which sets forth a claim for retaliatory discharge against Clyde Federal and Miedema, partially withstands defendants' mo-

tion to dismiss. In Count II, Hicks claims that while employed as an officer at Clyde Federal, he was in charge of making sure that Clyde Federal followed the Federal Community Reinvestment Act, 12 U.S.C. § 2901, *et seq.* ("FCRA"). According to Hicks, during his employment he became aware that Clyde Federal's advertising policy violated the FCRA and resulted in redlining. Hicks alleges that when he told Clyde Federal's advertising officer and its operating committee of his objection to Clyde Federal's noncompliance with the FCRA, Clyde Federal, through Miedema, fired him because of his objections.

In Illinois, an employer commits the tort of retaliatory discharge when he terminates an employee in violation of a clearly mandated public policy. *Barr v. Kelso-Burnett Company*, 106 Ill.2d 520, 88 Ill. Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981). Defendants argue that Hicks cannot show, as a matter of law, any public policy which Clyde Federal or Miedema violated by discharging him. Hicks claims his discharge clearly violated public policy.

The Illinois Supreme Court has acknowledged that the concept of "clearly mandated public policy" is imprecise. *Palmateer*, 52 Ill.Dec. at 15, 421 N.E.2d at 878. Nevertheless, the court has provided some general guidelines. In *Palmateer*, the court stated that public policy concerns what is right and just and what affects the citizens of the State collectively. *Id.* 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79. A matter must strike at the heart of a citizen's rights, duties, and responsibilities before it can serve as a basis for a retaliatory discharge action. *Id.* An example of such a matter is where an employee is fired for refusing to violate a statute or to act illegally. *Id.* 52 Ill.Dec. at 16, 421 N.E.2d at 879. The matter must be one affecting society, not simply an individual grievance. *Price v. Carmack Datsun, Inc.*, 109 Ill.2d 65, 92 Ill.Dec. 548, 485 N.E.2d 359, 361 (1985).

---

**2.** Count I clearly does not state a cause of action for breach of contract against Miedema. The complaint is void of any allegations of a con-

tractual relationship between Miedema and Hicks.

■ Applying these guidelines to the instant case, the court finds that Hicks' allegations are sufficient to state a claim for retaliatory discharge. Taking Hicks' allegations as true, Hicks' discharge violates public policy in at least two ways. First, Hicks' discharge undermines the fundamental public policy of effective protection of citizens' property. *See Palmateer*, 52 Ill.Dec. at 16, 421 N.E.2d at 879. The FCRA was adopted to regulate certain aspects of financial institutions for the benefit of communities. 12 U.S.C. § 2901. This statutory protection of citizens' property is thwarted by the firing of individuals such as Hicks who object to the violation of this protection.

Secondly, and perhaps more importantly, Hicks' discharge for his objections to Clyde Federal's statutory violations frustrates the public policy favoring the opposition to violations of the law. In *Palmateer*, the Illinois Supreme Court made clear the strong public policy favoring citizens' actions taken toward upholding state law. 52 Ill.Dec. at 17, 421 N.E.2d at 880. This public policy is equally as strong where, as here, federal statutory law is involved. *See Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 564–66, 485 N.E.2d 372, 375–77 (1985) (holding that the Energy Reorganization Act was a declaration of public policy by Congress); *Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 253, 498 N.E.2d 575, 577 (1986) (finding that federal securities laws are a source of public policy).

Defendants also argue that even assuming a public policy exists underlying the FCRA favoring protection of property, or one exists favoring opposition to violations of the law, Clyde Federal's termination of Hicks did not violate these public policies. Defendants contend that because Hicks only "objected" to Clyde Federal's activities, his conduct was not sufficient to constitute furtherance of these public policies. Therefore, reason the defendants, discharging Hicks for such conduct did not violate these public policies.

■ The court rejects their argument. Reading Hicks' allegations in the light most favorable to him, Hicks' "objections" may be construed as a refusal to participate in Clyde Federal's violation of the FCRA.[3] As the court has already pointed out, such conduct has been cited with approval by the Illinois Supreme Court as sufficient to form a basis for a retaliatory discharge action. *See Palmateer, supra*, 52 Ill.Dec. at 16, 421 N.E.2d at 879. Thus, the court finds that Hicks' allegations are sufficient to state a claim for retaliatory discharge against Clyde Federal.

■ However, Hicks' retaliatory discharge claim against Miedema is without merit. She is not his employer, and thus a retaliatory discharge claim does not lie against her. Therefore, Count II of Hicks' complaint must be dismissed with respect to Miedema.

For the foregoing reasons, Counts I and III of Hicks' complaint are dismissed entirely. Count II is dismissed with respect to defendant Sylvia Miedema. Only Hicks' retaliatory discharge claim against Clyde Federal in Count II survives defendants' motion to dismiss.

IT IS SO ORDERED.

---

**3.** Therefore, this case is distinguishable from *Fowler v. Great American Insurance Companies*, 653 F.Supp. 692 (N.D.Ill.1987), on which defendants heavily rely to support their argument. Hicks may be able to show that he fits into the second category discussed in *Fowler, i.e.*, that he was fired for refusing to engage in conduct requested by his employer which violates public policy. See *id.* at 697–98.

Moreover, this court questions whether the Illinois Supreme Court desired to make retaliatory discharge claims contingent on the amount or type of action which plaintiff takes in furtherance of the public policy which underlies his claim. Such a position would allow employers to avoid retaliatory discharge liability merely by discharging an employee before the employee has an opportunity to take sufficient action in furtherance of the public policy. However, in light of the liberal construction which this court must give the complaint on a motion to dismiss, it is unnecessary for the court to decide this issue.