John **HICKS**, Plaintiff,

v.

**CLYDE FEDERAL SAVINGS AND LOAN ASSOCIATION**, Defendant.

No. 87 C 8593.

United States District Court,
N.D. Illinois, E.D.

Oct. 5, 1989.

See also 696 F.Supp. 387.

John Kevin Kneafsey, Stephen G. Kehoe, Nisen & Elliott, Chicago, Ill., for plaintiff.

Philip J. Fowler, Groble & Groble, Ltd., Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

The second amended complaint filed in this diversity action by plaintiff John Hicks asserts a retaliatory discharge claim against Hicks' former employer, defendant Clyde Federal Savings and Loan ("Clyde Federal"). Hicks claims that Clyde Federal fired him for voicing objections to certain of Clyde Federal's business practices which Hicks maintains violated the Community Reinvestment Act ("CRA"), 12 U.S.C. § 2901 *et seq.*, and resulted in redlining. Earlier in this lawsuit, Clyde Federal moved to dismiss Hicks' retaliatory discharge claim, but the court denied that motion. Reading Hicks' complaint in the light most favorable to him, the court held that Hicks' allegations provide a sufficient basis for his claim that Clyde Federal fired him in violation of clearly mandated public policy. *See Hicks v. Clyde Federal Savings & Loan,* 696 F.Supp. 387 (N.D.Ill. 1988).

Based largely on deposition testimony, Clyde Federal has now moved for summary judgment. Clyde Federal maintains that the facts established during discovery demonstrate that Hicks' retaliatory discharge claim is deficient as a matter of law. The court disagrees. After reviewing the evidence submitted by the parties, the court finds that genuine issues of material fact remain unresolved in this case. Therefore, Clyde Federal's motion for summary judgment is denied.

■ Under Illinois law, an employer commits the tort of retaliatory discharge when he terminates an employee in violation of clearly mandated public policy. *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985); *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981). Clyde Federal maintains that the facts in this case do not support a retaliatory discharge claim for several reasons. Clyde Federal first argues that the CRA, the statute which Hicks claims he was fired for trying to uphold, does not establish a public policy. Therefore, Clyde Federal claims, even if Hicks was fired for trying to uphold the CRA, he was not fired in violation of public policy. This is a legal argument which the court already addressed and rejected in deciding Clyde Federal's motion to dismiss. The court ruled that if Hicks proves he was fired for refusing to participate in Clyde Federal's violations of the CRA which resulted in redlining, then Hicks' firing violated public policy and he can recover on his retaliatory discharge claim. *Hicks,* 696 F.Supp. at 390. There is no reason for the court to re-examine this issue on Clyde Federal's motion for summary judgment.

■ Clyde Federal's second argument is that even if the CRA embodies a public policy, the facts show that Clyde Federal did not violate the CRA or engage in redlining. To support this argument, Clyde Federal relies on the deposition testimony of various Clyde Federal employees, each of whom attested that Clyde Federal advertised its lending services and products to all races and neighborhoods in its community and never turned down a loan applicant solely on the basis of race or location of property. Testimony of other witnesses, however, contradicts Clyde Federal's posi-

tion. Thomas Martin, President of Clyde Federal and Hicks' immediate supervisor, testified at his deposition that he was "stonewalled" when he inquired about Clyde Federal's alleged CRA violations to Al Bishop, Clyde Federal's advertising director. Martin further testified that he later learned Clyde Federal was not advertising its services or offering its products to certain low and moderate income areas. Both Martin and Sylvia McKnight, another Clyde Federal employee, testified that members of Clyde Federal's board of directors indicated that they had no intention of making loans in certain areas or doing business with more blacks. Further, Jean Pogge, hired as an expert by Hicks to examine and analyze Clyde Federal's lending practices, testified at her deposition that Clyde Federal was not serving the credit needs of low and moderate income residents or minority residents within its community.[1] Taking all of this testimony into account, the court finds that a genuine issue of material fact exists regarding whether Clyde Federal's business practices violated the CRA and resulted in redlining.[2]

 Clyde Federal's third argument in support of its motion is that Hicks did not take sufficient action in furtherance of the public policy underlying his claim to sustain a cause of action for retaliatory discharge. However, Clyde Federal admits that Hicks sent a memo to Al Bishop objecting to the limited geographical scope of Clyde Federal's advertising. Hicks and Martin both testified that Bishop "stonewalled" them by refusing to discuss Clyde Federal's alleged noncompliance with the CRA. Hicks also testified that he presented his objections to Clyde Federal's viola-

tions of the CRA at meetings attended by members of Clyde Federal's board of directors. Thus, Hicks has presented some evidence tending to establish that he voiced objections to Clyde Federal's alleged violations of the CRA and that the board of directors was aware of those objections.

Clyde Federal maintains that Hicks' mere "objections" to its alleged violations of the CRA are not enough to sustain his retaliatory discharge claim. Clyde Federal contends that in order to recover for retaliatory discharge, Hicks must show that he was a "whistle-blower," *i.e.*, that he reported Clyde Federal's alleged violations to authorities or that he refused to acquiesce to Clyde Federal's demands that he participate in those violations. This argument has been rejected by the Illinois courts. For example, in *Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (1986), plaintiff complained that he was fired for objecting to certain accounting practices of the company which he claimed violated federal securities laws. The court held that he stated a cause of action for retaliatory discharge even though he expressed his objections only to his employer's management, not to law enforcement officials. 101 Ill.Dec. at 254–55, 498 N.E.2d at 578–79. Similarly, in *Petrik v. Monarch Printing Corp.*, 111 Ill.App.3d 502, 67 Ill.Dec. 352, 444 N.E.2d 588 (1982), an employee was fired for reporting to the company president that he believed other company employees were embezzling corporate funds. The court held that the employee stated a claim for retaliatory discharge. 67 Ill.Dec. at 356, 444 N.E.2d at 592.

Therefore, based on *Johnson* and *Petrik*, this court finds that Hicks' objections to

---

**1.** Clyde Federal's motion in limine seeking to bar Pogge's testimony was denied by Magistrate Gottschall on June 7, 1989.

**2.** Moreover, there is some support for the position that Hicks need not actually prove Clyde Federal violated the CRA or engaged in redlining in order to recover on his retaliatory discharge claim. In *Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (1986), the court stated:

... a plaintiff attempting to state a cause of action for retaliatory discharge after being

fired for reporting possible illegal activity need not allege or prove conclusively that the law has been violated in order to state a cause of action. Since under *Palmateer* this is the rule when an employee reports to law enforcement officials, it should certainly also be the rule that an employee with a reasonable belief that illegal activity is occurring should be able to report his belief to his superiors in an effort to ensure management's compliance with the law without fear of discharge....

101 Ill.Dec. at 254, 498 N.E.2d at 578.

Clyde Federal's alleged violations of the CRA constitute sufficient action in furtherance of public policy to support Hicks' retaliatory discharge claim. As this court stated in its earlier decision in this case, to hold otherwise would allow employers to thwart an employee's retaliatory discharge claim by firing the employee before he had a chance to reach authorities. *See Hicks v. Clyde Federal Savings & Loan,* 696 F.Supp. 387, 389 at n. 3 (N.D.Ill.1988). Such a system would reward ill-willed employers and penalize well-intentioned employees who attempt to rectify wrongdoing internally prior to taking public action. This court does not believe that the Illinois Supreme Court would adopt such an unpalatable construction of the tort.

Clyde Federal's final argument in support of its motion for summary judgment is that the facts demonstrate Hicks was fired for "legitimate" reasons, not for objecting to any of Clyde Federal's practices or policies. In support of this argument, Clyde Federal offers the testimony of certain members of Clyde Federal's board of directors. These board members aver that Hicks was fired for insubordination toward his superiors and for his disparaging attitude toward staff, both of which allegedly resulted in discord, strife, and turmoil in the office. At least one board member, however, offers a different view. Martin, the President of Clyde Federal and Hicks' immediate supervisor, testified that he never received any complaints about Hicks' performance, and that Hicks was an outstanding employee who had great ability. Moreover, even without Martin's testimony, this court could not conclude, as a matter of law, that Hicks was fired for "legitimate" reasons. Hicks has presented some evidence tending to show that he was fired for objecting to Clyde Federal's alleged violations of the CRA which resulted in redlining. Although Hicks has not produced a "smoking gun," he has produced sufficient evidence to create a genuine issue of material fact as to the reasons for his discharge. Therefore, his claim is not properly disposed of at this stage of the litigation. Clyde Federal's motion for summary judgment is accordingly denied.

IT IS SO ORDERED.