**John HICKS, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION as Receiver for Clyde Federal Savings and Loan Association, Sylvia Meidema, Robert Ropa, Valerian Musselman, Nicholas Lash, Ernest Melichar, Erwin Kucera, Steven Kuroski, and Lydia Franz, Defendants.**

**No. 87 C 8593.**

United States District Court, N.D. Illinois, E.D.

March 19, 1990.

See also 722 F.Supp. 501.

John Kneafsey and Stephen G. Kehoe, Nisen & Elliott, Chicago, Ill., for plaintiff.

George W. Groble, Groble & Groble, Ltd., Philip J. Fowler, Chicago, Ill., and Edward J. O'Meara, Fed. Home Loan Bank Bd., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

This matter comes before the court upon motions by the defendants to dismiss plaintiff's third amended complaint for failure to state a cause of action. Defendants' motions to dismiss are granted.

Plaintiff was fired as an employee of defendant, Clyde Federal Savings and Loan (Clyde) on April 24, 1987. As part of his duties for defendant, plaintiff was the officer in charge of Clyde's compliance with the federal Community Reinvestment Act (CRA). 12 U.S.C.A. § 2901, et seq. (1989). Plaintiff alleged that Clyde was in violation of the CRA and plaintiff's attempts to inform defendant of its noncompliance with the CRA and his attempts to bring defendant into compliance with the CRA led to defendant's firing of plaintiff.

On October 1, 1987, plaintiff filed a three count complaint naming defendants Clyde Federal Savings and Loan Association, Sylvia Meidema, Robert Ropa, Valerian Musselman, Nicholas Lash, Ernest Melichar, Erwin Kucera, Steven Kuroski, and Lydia Franz. Count I of the complaint alleged that Clyde and Meidema fired plaintiff without cause in violation of an alleged employment contract. Count II of plaintiff's complaint alleged that Clyde and Meidema fired him in retaliation for his complaints that Clyde's advertising policy violated the CRA. Count III alleged that Meidema and the other board members Ropa, Musselman, Lash, Melichar, Kucera, Kuroski, and Franz, conspired to breach plaintiff's alleged employment contract and that their actions amounted to tortious interference with the contract.

Defendants filed a motion to dismiss all three counts of the complaint. In a published opinion, Judge Bua granted defendants' motion to dismiss all three counts except as to Count II which Judge Bua allowed to stand as against Clyde ruling that it sufficiently stated a cause of action for the tort of retaliatory discharge. *Hicks v. Clyde Federal Savings and Loan*, 696 F.Supp. 387 (N.D.Ill.1988). Defendant Meidema was dismissed from Count II based upon Judge Bua's determination that the tort of retaliatory discharge in Illinois does not lie against the supervisor or other employee, but only against the employer. 696 F.Supp. 387. Counts I and III were dismissed based on Judge Bua's determination that no contract of employment existed between plaintiff and defendant and that plaintiff as an employee at-will could be dismissed without cause. 696 F.Supp. 387.

On May 8, 1989, plaintiff filed a second amended complaint which detailed the specific circumstances surrounding the alleged noncompliance with the CRA by defendant Clyde and plaintiff's attempts to inform defendant of this noncompliance.

In November of 1989, this was one of the cases transferred to this court to create a civil docket.

On January 23, 1989, plaintiff filed a motion which sought reconsideration of Judge Bua's prior order dismissing defendant Meidema from plaintiff's retaliatory discharge count. Additionally, plaintiff sought leave to file his third amended complaint, which not only would add Meidema as a defendant to plaintiff's retaliatory discharge claim, but also the other defendants who were members of the board. This court, upon reconsideration of Judge Bua's dismissal, granted plaintiff's motion based upon its conclusion that the law in Illinois, though unsettled, would allow a claim for retaliatory discharge against not only the employer, but the supervisor or other agent of the employer who is involved in the actions which led to the alleged retaliatory discharge. *See Fellhauer v. City of Geneva, et al.*, 190 Ill.App.3d 592, 137 Ill. Dec. 846, 546 N.E.2d 791 (1989); appeal allowed, 129 Ill.2d 563, 140 Ill.Dec. 670, 550 N.E.2d 555 (1990). Plaintiff was granted leave to file his third amended complaint which named, not only Meidema, but the defendants Ropa, Musselman, Lash, Melichar, Kuroski, Kucera, and Franz.

Defendant Clyde filed a motion to dismiss plaintiff's third amended complaint for failure to state a cause of action for retaliatory discharge. Defendant Meidema also filed a motion to dismiss for failure to state a cause of action for retaliatory discharge. The other defendants: Ropa, Musselman, Lash, Melichar, Kuroski and Franz, filed a motion to dismiss plaintiff's third amended complaint for failure to state a cause of action for retaliatory discharge and for failure to name them as defendants within the statute of limitations. Defendant Kucera did not join the motion to dismiss. The court has received a suggestion that his death occurred on June 2, 1989.

The Resolution Trust Corporation, as receiver for Clyde, was substituted as defendant on February 26, 1990. (This defendant will continue to be referred to as Clyde throughout the opinion.)

■ Defendants' motions to dismiss seek this court's reconsideration of a prior ruling which denied similar motions to dismiss which raised the same arguments. While the doctrine of the law of the case suggests that the court should refrain from reconsidering a prior ruling in the same case, the law of the case is a discretionary doctrine and is not designed to perpetuate error. *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc.*, 632 F.2d 680 (7th Cir.1980). Whereas here, the court is convinced that the prior ruling was clearly erroneous, the court should not hesitate to correct error. 632 F.2d 680.

The issue which the court in its discretion chooses to reconsider is whether plaintiff's claim that he was fired for reporting defendant Clyde's noncompliance with the CRA and for his attempts to bring defendant within compliance of the CRA, states a cause of action for retaliatory discharge in Illinois.

■ An employer commits the tort of retaliatory discharge in Illinois when the employee is discharged in retaliation for the employee's activities and the discharge of the employee for such activities contravenes a clearly mandated public policy which affects the citizens of the State of Illinois collectively. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876 (1981). What constitutes a clearly mandated public policy of the citizens of the State of Illinois collectively is to be found in the State's constitution, statutes, and, when they are silent, in its judicial decisions. 52 Ill.Dec. 13, 421 N.E.2d 876.

The Illinois Supreme Court recognized the tort of retaliatory discharge for the first time in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). In *Kelsay*, the court held that an employee allegedly fired for filing a workers' compensation claim under the Illinois Workers' Compensation Act, Ill.Rev.Stat. ch. 48, para. 138.1 *et seq.* (Smith–Hurd 1986), stated a cause of action for retaliatory discharge. In *Kelsay*, the court discussed how the Workers' Compensation Act substituted an entirely new system of rights and remedies and procedures for all previously existing common law rights and liabilities between employers and employ-

ees subject to the Act for accidental injuries to employees arising out of and in the course of employment. 23 Ill.Dec. at 562, 384 N.E.2d at 356. A fundamental purpose of the Workers' Compensation Act is to afford protection to employees by providing prompt and equitable compensation for their injuries. 23 Ill.Dec. at 562, 384 N.E.2d at 356. The court found that the legislature's enactment of the Workers' Compensation Act was in furtherance of a sound public policy to provide efficient remedies for and protection of employees. 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court found that the legislative scheme of the Act would be seriously undermined if employers were permitted to abuse their power to terminate employees by threatening to discharge employees for seeking compensation under the Act. The court refused to ignore the fact that many employees faced with such a dilemma would choose to retain their jobs, and thus, in effect, be left without a remedy either at common law or statutory. 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court stated "this result, which effectively relieves the employer of the responsibility expressly placed upon him by the legislature, is untenable and is contrary to the public policy expressed in the Workers' Compensation Act." 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court went on to reject the employer's argument that the legislature's amendment of the Act in 1975 to add criminal sanctions against an employer who threatened or effected such a discharge evidenced a decision that no civil remedy should exist. 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court held that the public policy of the State, as stated in the Workers' Compensation Act, could only be effectively implemented and enforced by allowing a civil remedy for damages, distinct from any criminal sanctions which may be imposed on employers for violating the Act after 1975. 23 Ill.Dec. at 564, 565, 384 N.E.2d at 358, 359.

"The foundation of the tort of retaliatory discharge lies in the protection of public policy." *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 17, 421 N.E.2d 876, 800 (1981). The determination of what is clearly mandated public policy of the State of Illinois has been called the Achilles heel of the principle underlying the tort of retaliatory discharge. 52 Ill.Dec. at 15, 421 N.E.2d at 878. In *Palmateer,* the Illinois Supreme Court stated:

> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] * * * [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed.

> .    .    .    .    .

> The cause of action is allowed where the public policy is clear, but is denied where it is equally clear that only private interests are at stake.

52 Ill.Dec. at 15–16, 421 N.E.2d at 878–879.

In *Palmateer,* the Illinois Supreme Court, relying on its prior decisions, recognized a clearly mandated public policy favoring "citizen crime-fighters". 52 Ill.Dec. at 17, 421 N.E.2d at 880. The court based its holding on its finding that there is no public policy more basic or fundamental than the public policy favoring effective protection of the lives and property of citizens and to this end the enforcement of the State's criminal code. 52 Ill.Dec. at 17, 421 N.E.2d at 880. While the court recognized that there was no specific constitutional or statutory provision requiring a citizen to actively participate in ferreting out and prosecuting crime, the court stated "public policy, nevertheless, favors citizen crimefighters". 52 Ill.Dec. at 17, 421 N.E.2d at 880. " 'Public policy favors exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to the effective implementation of that policy ...' [citation omitted]." 52 Ill.Dec. at 17, 421 N.E.2d at 880. The court held that the plaintiff, who alleged that he was fired in retaliation for supplying information to law-enforcement authorities about a co-employee's possible violation of the State's

criminal code and agreeing to assist in the investigation and trial of the employee, stated a cause of action for retaliatory discharge in Illinois. 52 Ill.Dec. at 17, 421 N.E.2d at 880.

In *Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985), the Illinois Supreme Court relied on federal law in holding that protection of citizens from the hazards of radioactive material is as important as the public policy recognized in *Palmateer* of protecting citizens of Illinois from crime. The court found that the Atomic Energy Act of 1954, 42 U.S.C.A. § 2011 *et seq.* (1989), enunciated a public policy of national scope effectively declaring a clearly mandated public policy favoring protection of citizens from the hazards of radioactive material. 92 Ill.Dec. at 566, 485 N.E.2d at 377. Based upon its finding that protection of the State's citizens from hazardous radioactive materials was as important as protecting the State's citizens from crime, the court found that the plaintiff who alleged he was fired in retaliation for refusing to transport radioactive material in violation of the regulations promulgated under the Atomic Energy Act of 1954, stated a cause of action in Illinois for the tort of retaliatory discharge.

In *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985), the Supreme Court of Illinois refused to find a clearly mandated public policy in the federal and state constitutional rights of free speech and due process. The court held that the fact that a constitutional or statutory provision is cited in the complaint does not give rise to a claim for retaliatory discharge. 88 Ill.Dec. 628, 478 N.E.2d 1354. The public policy underlying a statutory or constitutional provision is to be found by examining the history, purpose, and effect of the provision. 88 Ill.Dec. 628, 478 N.E.2d 1354. The court found that the constitutional provisions relied upon by the plaintiff established a clearly mandated public policy limiting the power of government, but nothing in the provisions established a public policy concerning the relationship between private individuals, including the employer-employee relationship.

88 Ill.Dec. at 628, 478 N.E.2d at 1354. The court reiterated that by its decisions in *Kelsay* and *Palmateer,* it did not " 'reject a narrow interpretation of the tort of retaliatory discharge' nor 'strongly support' the expansion of the tort". 88 Ill.Dec. at 630, 478 N.E.2d at 1356.

In *Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 92 Ill.Dec. 548, 485 N.E.2d 359 (1985), decided the same day as *Wheeler,* the Supreme Court of Illinois held that the Illinois Insurance Code did not establish a clearly mandated public policy such that an employee allegedly fired for filing a health insurance claim stated a cause of action for retaliatory discharge. The court noted that the entire insurance industry is regulated and that the Insurance Code regulates all types of insurance and policies issued in the State. 92 Ill.Dec. at 550, 485 N.E.2d at 361. The court after reiterating its statement in *Palmateer* that a clearly mandated public policy must strike at the heart of a citizen's social rights, duties, and responsibilities, found the matter involved in the plaintiff's complaint to be "a private and individual grievance rather than one affecting our society". 92 Ill.Dec. at 550, 485 N.E.2d at 361.

This court's attempts to find a common thread or trend as to what the Illinois Supreme Court will recognize as a clearly mandated public policy of the State of Illinois is made difficult by the fact that the tort of retaliatory discharge is relatively new in Illinois and there are a limited number of cases in which the Illinois Supreme Court has addressed the issue. However, this fact does not prevent the court from arriving at the conclusion that the policy enunciated in the CRA would not be found by the Illinois Supreme Court to be a clearly mandated public policy of the State in contravention of which an employer who discharges an employee commits the tort of retaliatory discharge.

In the instant case, plaintiff alleges that he was fired for reporting his employer's noncompliance with the CRA, and for his attempts to bring his employer into compliance with the CRA. *See* 12 U.S.C.A. § 2901, *et seq.* (1989). Section 2901 enunci-

ates the Congressional findings and statement of purpose of the CRA and provides:

   (a) The Congress finds that—

     (1) regulated financial institutions are required by law to demonstrate that their deposit facilities serve the convenience and needs of the communities in which they are chartered to do business.

     (2) the convenience and needs of communities include the need for credit services as well as deposit services; and

     (3) regulated financial institutions have a continuing and affirmative obligation to help meet the credit needs of the local communities in which they are chartered.

   (b) It is the purpose of this chapter to require each appropriate Federal financial supervisory agency to use its authority when examining financial institutions, to *encourage* such institutions to help meet the credit needs of the local communities in which they are chartered consistent with the safe and sound operation of such institutions. (Emphasis added.)

12 U.S.C.A. § 2901 (1981).

Section 2903 provides:

In connection with its examination of a financial institution, the appropriate Federal financial supervisory agency shall—

     (1) assess the institution's record of meeting the credit needs of its entire community, including low- and moderate-income neighborhoods, consistent with the safe and sound operation of such institution; and

     (2) *take such record into account* in its evaluation of an application for a deposit facility by such institution. (Emphasis added.)

12 U.S.C.A. § 2903 (1989).

Section 2906 provides for the appropriate federal supervisory agency to generate written evaluations detailing an institution's record of meeting the credit needs of the entire community and the facts relied upon and conclusions reached by the agency. 12 U.S.C.A. § 2906 (1989). Section 2906 further provides that the agency shall assign a rating from "outstanding" to "substantial noncompliance". 12 U.S.C.A. § 2906(b)(2) (1989). There are no provisions for civil sanctions for an institution's noncompliance, let alone criminal sanctions. *See* 12 U.S.C.A. §§ 2901–2906 (1989); *Corning Savings and Loan Association v. Federal Homes Loan Bank Board,* 571 F.Supp. 396 (E.D.Ark.1983); *aff'd,* 736 F.2d 479 (8th Cir.1984). At most, the federal supervisory agency may take noncompliance into account in considering an application for a deposit facility. 12 U.S.C.A. § 2903(2) (1989).

   ■ In *Kelsay v. Motorola, Inc.,* the clearly mandated public policy of Illinois was found in the Illinois legislature's enactment of a comprehensive statutory scheme which did away with certain common law rights by regulating the relationship between employers and employees in connection with injuries to employees at work. 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The clearly mandated public policy of the statute would have been undermined if additional liability had not been placed upon the employer who discharged an employee in contravention of the policy of providing efficient remedies and protection to injured employees. 23 Ill.Dec. at 564, 565, 384 N.E.2d at 358, 359; *Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 92 Ill. Dec. 548, 550, 485 N.E.2d 359, 361 ("public policy [in *Kelsay*] required that the employer be made additionally liable for the wrongful discharge"). In contrast, the CRA's expressed policy is merely the encouragement of financial institutions to meet the credit needs of their communities by directing the appropriate federal supervisory agency in the exercise of its examining authority to take into account an institution's compliance or noncompliance in the agency's evaluation of an application for a deposit facility by the institution. 12 U.S.C.A. §§ 2901–2906 (1981). The policy of the CRA would not be undermined by not recognizing the tort of retaliatory discharge where an employer discharges an employee who complains about the employer's noncompliance where the statute itself provides no civil or criminal liability for such noncompliance but only directs such

noncompliance to be considered by the federal supervisory agency in ruling on a deposit facility application. The policy of the CRA does not strike at the heart of a citizen's social rights, duties and responsibilities. *See Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

In *Palmateer*, the clearly mandated public policy was evidenced by the State's criminal code and was the fundamental public policy of protecting Illinois citizens from crime. 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). Noncompliance with the CRA is not a crime, state or federal. Unlike a violation of the State's criminal code, violation of the policy behind the CRA does not pose a serious threat to the health and safety of Illinois citizens. Compare *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985).

In *Wheeler*, the Illinois Supreme Court did rely on a federal statute in holding that a public policy contained in the federal statute was also a clearly mandated public policy of Illinois. 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985). The holding in *Wheeler*, was based upon the Illinois Supreme Court's determination that the public policy of protecting Illinois citizens from the hazards of radioactive material evidenced by the comprehensive statutory scheme of the Atomic Energy Act of 1954, 42 U.S.C.A. § 2011 *et seq.* (1989), was as important and fundamental as the policy of protecting Illinois citizens from crime. 92 Ill.Dec. at 566, 485 N.E.2d at 377. This court does not find the policy evidenced by the CRA equates with the fundamental and clearly mandated public policy of protecting the health and safety of Illinois citizens from crime and radioactive materials recognized in *Palmateer* and *Wheeler*. The holding in *Wheeler*, does not lead to the conclusion that the Illinois Supreme Court will equate the public policy of all federal enactments with that of a clearly mandated public policy of Illinois.

In *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985), the Illinois Supreme Court warned against the undue expansion of the tort of retaliatory discharge. *Fellhauer v. City of Geneva, et al.*, 190 Ill.App.3d 592, 137 Ill.Dec. 846, 546 N.E.2d 791 (1989); appeal allowed, 129 Ill.2d 563, 140 Ill.Dec. 670, 550 N.E.2d 555, (1990). The tort of retaliatory discharge is the narrow exception to the law in Illinois that an at-will employee may be terminated at any time for any or no cause. *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981).

This court concludes that the prior determination that the public policy expressed by the CRA was a clearly mandated public policy of the State of Illinois for the purpose of stating a cause of action for the tort of retaliatory discharge was clearly erroneous. Therefore, this court having exercised its discretion to reconsider the order of the court entered October 7, 1988, which denied defendants' motions to dismiss the plaintiff's retaliatory discharge count and having found that order to be clearly erroneous, grants defendants' motions to dismiss plaintiff's third amended complaint for retaliatory discharge.

ORDERED: Defendants' motions to dismiss plaintiff's third amended complaint are granted and Case No. 87 C 8593 is dismissed with prejudice as to all defendants.