**John HICKS, Plaintiff–Appellant,**

**v.**

**RESOLUTION TRUST CORPORATION, as Receiver for Clyde Federal Savings and Loan Association, Sylvia Miedema, Robert Ropa, Valerian Musselman, Nicholas Lash, Ernest Melichar, Steven Kuroski, Lydia Franz, and the Estate of Erwin Kucera, Defendants–Appellees.**

No. 91–2587.

United States Court of Appeals, Seventh Circuit.

Argued May 27, 1992.

Decided Aug. 7, 1992.

Stephen G. Kehoe, Nisen & Elliott, John K. Kneafsey (argued), Chicago, Ill., for plaintiff-appellant.

George W. Groble, Donald G. Groble (argued), Groble & Groble, Chicago, Ill., Edward J. O'Meara, Federal Home Loan Bank Bd., Washington, D.C., Michael J. Mueller, Carla J. Rozycki (argued), Keck, Mahin & Cate, Chicago, Ill., for defendants-appellees.

Before MANION and KANNE, Circuit Judges, and LEE, District Judge.*

KANNE, Circuit Judge.

The primary question raised in this appeal is whether, under Illinois law, an employee can maintain an action for retaliatory discharge when he alleges that he was terminated for urging his employer's compliance with the Federal Community Reinvestment Act, 12 U.S.C. § 2901, *et seq.* On the employer's motion to dismiss, the district court below ruled that such a claim was not actionable because the Federal Community Reinvestment Act does not articulate a clearly mandated public policy of the state of Illinois. We affirm.

The complaint alleges the following facts, which we must take as true for purposes of this appeal. *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990). The plaintiff, John Hicks, was employed as Vice President and Manager of Mortgage Lending at Clyde Federal Savings and Loan Association. As Vice President he was responsible for making sure that Clyde Federal complied with the Community Reinvestment Act, a federal act designed to help meet the credit needs of local communities. Briefly stated, the Community Reinvestment Act requires lending institutions to advertise and make available mortgages for low and moderate income markets. To ensure enforcement, the Federal Home Loan Bank Board ("FHLBB") is empowered with the authority to promulgate additional regulations and to conduct periodic investigations of each institution and its mortgage policies. Only the FHLBB may determine whether a lending institution is in compliance with the Reinvestment Act.

On February 16, 1987, Hicks provided the FHLBB examiners with a written report indicating that Clyde Federal was violating Community Reinvestment Act regulations. Specifically, Hicks' report alleged that Clyde Federal had made no investments in minority neighborhood projects; that it was not marketing any VA or FHA loans to minority groups; and that it was advertising only in a local northwest community paper and a magazine circulated to mortgage bankers, financial institutions and realtors. FHLBB examiners met with Hicks several days later and discussed Clyde Federal's noncompliance in greater detail. When Clyde Federal finally learned of Hick's communications with the FHLBB, its response was swift and severe—Hicks was fired.

Shortly after his termination, Hicks filed this suit against Clyde Federal and its Board of Directors.[1] His third amended complaint alleged only one count: that the defendants fired him in retaliation for informing the FHLBB that Clyde Federal was violating the Community Reinvestment Act.[2] In response, the defendants filed a motion to dismiss Hicks' complaint for failure to state a cause of action which would entitle him to relief under Illinois law. The defendants' motion was granted. According to District Judge George Lindberg, the federal Community Reinvestment Act did not articulate a clearly mandated public policy of the State of Illinois—one of the three elements necessary to a retaliatory discharge claim—and thus Hicks' claim had to be dismissed. In so doing, however,

---

* The Honorable William C. Lee, District Judge of the Northern District of Indiana, is sitting by designation.

1. The Resolution Trust Corporation, as receiver for Clyde Federal, was substituted as defendant on February 26, 1990.

2. Hicks' original complaint alleged three counts: Count I alleged common law breach of contract; Count II alleged retaliatory discharge; and Count III alleged tortious interference with contractual rights. The defendants filed a motion to dismiss all three counts, and the district court—Judge Nicholas Bua, presiding—granted the motion as to Counts I and III only. In

reaching this conclusion, Judge Bua held, *inter alia,* that the Community Reinvestment Act demonstrated a public policy sufficient to form the basis of a retaliatory discharge claim. 696 F.Supp. 387. (N.D.Ill.1988).

On May 8, 1989, Hicks filed a second amended complaint which detailed the specific circumstances surrounding Clyde Federal's alleged noncompliance with the Community Reinvestment Act. The court then granted Hicks leave to file a third amended complaint—the complaint at issue in the instant litigation—wherein Hicks added the individual Board of Directors to the list of defendants.

Judge Lindberg overruled a previous determination by former District Judge Nicholas Bua that the Reinvestment Act evinced a public policy which could form the basis for a retaliatory discharge claim. Judge Lindberg reasoned:

> While the doctrine of the law of the case suggests that the court should refrain from reconsidering a prior ruling in the same case, the law of the case is a discretionary doctrine and is not designed to perpetuate error. *Champaign–Urbana New Agency, Inc. v. J.L. Cummins News Co., Inc.*, 632 F.2d 680 (7th Cir. 1980). Whereas here, the court is convinced that the prior ruling was clearly erroneous, the court should not hesitate to correct error.

*Hicks v. Resolution Trust Corp.*, 736 F.Supp. 812, 814 (N.D.Ill.1990).

Hicks in turn filed a fourth amended complaint, with leave of the court. Count I alleged a conspiracy to violate civil rights and sought relief under 42 U.S.C. §§ 1985(3) and 1986; Count II asserted a violation of 12 U.S.C. § 1831j, a statute which prohibits discrimination against whistleblowers; and Count III stated a pendent claim for intentional infliction of emotional distress. None of these claims met with any greater success. Counts I and III were dismissed on the defendants' motion, and the court granted summary judgment in favor of the defendants on Count II because Hicks could not disprove his own participation in Clyde Federal's alleged violations of the Reinvestment Act. 767 F.Supp. 167. This appeal followed.

■ The primary issue for our resolution today is whether the district court properly dismissed Hicks' retaliatory discharge claim in his third amended complaint. To state a viable claim for retaliatory discharge in Illinois, Hicks had to prove three things: (1) that he had been discharged; (2)

that his discharge was in retaliation for his activities; and (3) that his discharge violated a clearly mandated public policy of the state of Illinois. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill. Dec. 694, 696, 519 N.E.2d 909, 911 (1988); *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 632, 478 N.E.2d 1354, 1358 (1985). Hicks now contends that Judge Lindberg erred in concluding that his claim failed to establish the third element—a violation of a clearly mandated Illinois policy. Although he concedes that the Community Reinvestment Act is a *federal* law, he asserts that its stated purpose—to regulate financial institutions for the benefit of all local communities—delineates a policy which enjoys equal recognition under the laws of Illinois. Thus he concludes that Judge Bua's earlier determination should be enforced under the law of the case.

■ Illinois courts have repeatedly expressed their reluctance to expand the tort of retaliatory discharge, *Ludwig v. C & A Wallcoverings, Inc.*, 960 F.2d 40 (7th Cir. 1992), and nowhere has this been more apparent than with respect to the "public policy" element.[3] As the Illinois Supreme Court pointed out in *Barr v. Kelso–Burnett*, simply citing a constitutional or statutory provision in the complaint is not enough. *Barr*, 88 Ill.Dec. at 631, 478 N.E.2d at 1357 (no action for retaliatory discharge where claimant merely relied on the public policy expressed under the federal and state constitutional rights of free speech and due process). Rather, the policy identified in the complaint must either "strike at the heart of a citizen's social rights, duties and responsibilities before the tort will be allowed," *Palmateer v. International Harvester Co.*, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79 (1981), or involve the protection of each citizen's health and safety. *Wheeler v. Caterpillar Trac-*

---

**3.** Indeed, since the tort's recognition in 1978, only a handful of laws have been characterized as evincing an Illinois public policy which may be violated by a discharge. *See e.g., Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978) (an employer could frustrate the purpose of the Illinois Workmen's Compensation Act by exercising its absolute

power to terminate an employee at will); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 16–17, 421 N.E.2d 876, 879–880 (1981) (an employer could thwart the obvious public policy favoring the investigation and prosecution of crime by terminating an employee complaining of criminal conduct).

*tor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 563–66, 485 N.E.2d 372, 374–77 (1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 187 (1986).

■ Does the Community Reinvestment Act bear on policy which directly implicates an Illinois citizen's rights, duties or health? We think not. The Act's purpose, as expressed in its statement of policy, is financial in its nature—to encourage banks and other lending institutions to help meet the credit needs of the local communities in which they are chartered. 12 U.S.C. § 2901. There is no language which suggests that the Community Reinvestment Act was intended to prevent racially discriminatory lending policies or minority "redlining," as Hicks would have us believe. Nor does the CRA's legislative history reflect any congressional intent other than that of promoting sound community banking policy. As Senator William Proxmire—the CRA's primary congressional sponsor—stated:

> [The CRA] is intended to establish a system of regulatory incentives to encourage banks and savings institutions to more effectively meet the credit needs of the localities they are chartered to serve, consistent with sound lending policies.

123 Cong.Rec. 1958–1959. In short, the CRA was not enacted to govern or restrict the power and actions of private individuals, and it certainly was not enacted to protect individuals from any threat to their physical wellbeing. We therefore decline Hicks' invitation to accept any interpretation of the CRA to the contrary.

■ Hicks' attempt to characterize his discharge as violative of the public policy in favor of law enforcement and the prosecution of crimes likewise fails. The Community Reinvestment Act makes no provision for a civil private cause of action, let alone criminal sanctions. *See* 12 U.S.C.A. § 2901–2906 (1989); *Corning Savings and Loan Association v. Federal Homes Loan*

*Bank Board,* 571 F.Supp. 396 (E.D.Ark. 1983), *aff'd,* 736 F.2d 479 (8th Cir.1984) (CRA provides no sanctions for unsatisfactory record of investment). The FHLBB may, at most, consider an institution's noncompliance "in its evaluation of an application for a deposit facility by such institution." 12 U.S.C. § 2903. As such, we do not see how the Act's policy would be frustrated by declining to recognize Hicks' claim for retaliatory discharge—Clyde Federal would not really suffer any penalty whether Hicks kept quiet or not. Hence, Judge Lindberg acted properly in setting aside the earlier determination and dismissing Hicks' claim for retaliatory discharge.

■ Hicks next contends that the district court erroneously dismissed his conspiracy claim under 42 U.S.C. §§ 1985(3) and 1986.[4] We are not persuaded. Quite simply, Hicks' purported status as a "whistleblower" does not entitle him to civil rights protection under §§ 1985(3) and 1986. Whistleblowers cannot, by imaginative pleadings, qualify as a class afforded § 1985(3) protection, for they do not possess any of the characteristics—i.e. race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities. *Deubert v. Gulf Federal Savings Bank,* 820 F.2d 754, 757 (5th Cir.1987); *Deretich v. Office of Administrative Hearings,* 798 F.2d 1147, 1153 (8th Cir.1986); *Buschi v. Kirven,* 775 F.2d 1240, 1258 (4th Cir.1985); *Stephenson v. Veteran's Administration,* 1991 WL 208898, 1991 U.S. Dist. LEXIS 14478 (E.D.Pa. Oct. 8, 1991); *Phillips v. Commonwealth of Pennsylvania, Dep. of Public Welfare,* 1989 WL 4451, 1989 U.S. Dist. LEXIS 498 (E.D.Pa. Jan. 19, 1989); *Pope v. Bond,* 641 F.Supp. 489, 499 (D.D.C.1986). Of course, in the absence of a viable claim under § 1985(3), a § 1986 claim cannot exist. *Santistevan v. Loveridge,* 732 F.2d 116, 118 (10th Cir.1984).

---

**4.** Section 1985(3) provides, in pertinent part:
(3) Depriving persons of rights or privileges.· If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages.
42 U.S.C. § 1985(3) (1988).

Finally, Hicks contends that the district court erroneously entered summary judgment against him as to the § 1831j claim of his fourth amended complaint. Section 1831j was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, and generally provides broad protection to whistleblowers except in two instances:

**(d) Limitation**

The protections of this section shall not apply to any employee who

(1) deliberately causes or participates in the alleged violation of law or regulation, or

(2) knowingly or recklessly provides substantially false information to such an agency or the Attorney General.

12 U.S.C. § 1831j(d) (West 1989). The district court below ruled that Hicks' behavior fell within the purview of the above limitation, because Hicks admitted in several interrogatories that he signed and submitted a memo to FHLBB examiners indicating that Clyde Federal was in compliance with the Community Reinvestment Act, notwithstanding his knowledge to the contrary. Accordingly, the court entered summary judgment against him. Hicks now asserts that the extent of his knowledge is in dispute, thereby precluding entry of summary judgment.

The law is well-settled that we review a district court's entry of summary judgment *de novo*, drawing all reasonable inferences in favor of the non-moving party. *Santella v. Chicago*, 936 F.2d 328, 331 (7th Cir.1991); *First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 398 (7th Cir. 1990). Summary judgment is only appropriate if we can determine that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Schroud*, 916 F.2d at 398.

Viewing Hicks' claim in this light, we conclude that the district court properly entered summary judgment against him. Hicks plainly was a participant in Clyde Federal's alleged violations of the Community Reinvestment Act, as the following

questionnaire—which he signed and submitted to the FHLBB—indicates:

3. Are there neighborhoods or areas within the association's effective lending territory in which the association makes dwelling loans on more restrictive terms? No.

4. Are there neighborhoods or areas within the association's effective lending territory in which the association does not make dwelling loans? No.

Hicks admitted on his own accord that at the time he submitted this questionnaire, he was aware that Clyde Federal was violating Community Reinvestment Act regulations, and whether he understood the full extent of all of Clyde Federal's violations makes him no less a participant. The limitation of § 1831j(d) applies and thus summary judgment was appropriate.

The judgment of the district court is AFFIRMED.