**Linda Lorincz SHELTON,**
**Plaintiff–Appellant,**

v.

**Thomas BUMP, et al., Defendants–**
**Appellees.**

**No. 04–3224.**

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 12, 2004.[*]

Decided Nov. 12, 2004.

* Because there are no appellees or attorneys to be served in this appeal, the appeal has been submitted without the filing of a brief by the appellees. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the brief and the record. *See* Fed. R.App. P. 34(a)(2).

Before COFFEY, ROVNER, and SYKES, Circuit Judges.

### ORDER

Dr. Linda Shelton is a medical doctor, formerly on staff at the Advocate Christ Medical Center (ACMC). Her 55–page amended complaint relates the decline of her relationship with ACMC ending in the revocation of unspecified staff privileges. She filed this *pro se* lawsuit under 42 U.S.C. §§ 1983, 1985(3) and 1986, alleging that ACMC personnel violated her constitutional rights to due process, equal protection, compulsory process, free speech, and freedom from unreasonable arrest. At initial screening, the district court reviewed her complaint and dismissed it for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). We affirm.

We start with the facts as Dr. Shelton tells them in her complaint and draw all inferences in her favor. *See Wynn v. Southward*, 251 F.3d 588, 591–92 (7th Cir. 2001). In February 2002, while on staff at ACMC, Dr. Shelton called the police and instructed them to take two minors from an Illinois Department of Children and Family Services (DCFS) shelter and transport them to ACMC because DCFS was "endangering their lives" through medical neglect. At the ensuing juvenile court proceedings, she claims, an assistant state's attorney and a DCFS attorney arranged for a DCFS witness to falsely tetsify that Dr. Shelton suffered from "Munchausen's by proxy," a psychiatric disorder that leads her to seek attention by fabricating symptoms in children under her care. The state trial judge ordered the children returned to DCFS and ordered

Dr. Shelton "thrown out of [the] courtroom."

Shortly after the hearing, Dr. Shelton alleges, ACMC officials retaliated against her by suspending certain staff privileges. She says that the CEO of ACMC CEO wrote her that her privileges were being suspended because of her conduct in "embroiling" the hospital in "personal battles" with DCFS that were "disruptive" to the hospital operations. Dr. Shelton refused to leave the hospital because she deemed ths suspension to be unauthorized, and she was subsequently arrested by Oak Lawn police officers and jailed for criminal trespass. ACMC held a hearing at which Dr. Shelton's suspension was lifted, but she was placed on probation with various conditions that she contends were unduly onerous, such as being required to visit a clinic that provides evaluation, treatment, and monitoring of "impaired physicians" and to refrain from discussing her suspension with other ACMC staff. Dr. Shelton refused to comply with these terms. ACMC ultimately revoked her staff privileges after another hearing at which she says she was not was not allowed to testify or present witnesses and ACMC personnel presented false testimony against her. All of this, she claims, caused her mental anguish, humiliation, loss of liberty, loss of income, and other injuries.

Shelton sued ACMC personnel under 42 U.S.C. §§ 1983, 1985(3), 1986, and state law. The heart of her federal claims is that ACMC personnel violated her constitutional rights to due process, equal protection, compulsory process, free speech, and freedom from unreasonable arrest.

The district court dismissed all of Shelton's federal claims for failure to state a claim. *See* § 1915(e)(2)(B)(ii). The court determined that she did not state a claim under § 1983 because nothing in her complaint suggested that any of the ACMC personnel she sued were acting "under color of law." The court also determined that Dr. Shelton did not state a § 1985 conspiracy claim because her complaint did not suggest that the ACMC defendants had a racial or class-based motive for their alleged actions against her. Because Dr. Shelton did not allege a viable claim under § 1985, the court dismissed her § 1986 claim as well. Finding no viable federal claim, the court dismissed the state law claims for lack of federal subject matter jurisdiction.

On appeal Dr. Shelton argues that the court improperly dismissed her § 1983 claim because she did allege a conspiracy between ACMC and Illinois state actors under color of law to violate her constitutional rights. She contends that the court overlooked allegations contained in the complaint that ACMC personnel conspired with various state actors—whom she identifies on appeal as "staff at Illinois DCFS, a corrupt Cook County Circuit Judge, [and] corrupt staff at the Cook County Sheriff's department"—to violate (1) her Fourth Amendment rights by lying to police in order to have her arrested; (2) her free speech rights by prohibiting her from discussing with coworkers the events surrounding her suspension; and (3) and her due process rights by denying her a fair hearing before making employment decisions against her.

■ To establish § 1983 liability on a conspiracy theory, Dr. Shelton must demonstrate that the private party ACMC defendants reached an understanding with state officials to deprive her of her constitutional rights. *See Williams v. Seniff,* 342 F.3d 774, 785 (7th Cir.2003). Nowhere in her complaint does Dr. Shelton allege a conspiracy extending beyond the ACMC defendants to any state actors—no state actors were even named as defendants. Of course, under Fed.R.Civ.P. 8, a com-

plaint need only put the defendant on notice of what he or she is charged with by alleging the parties, purpose, and approximate date of the conspiracy. *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dr. Shelton pleaded additional facts, however, which show that her conspiracy claim is unfounded. Though she argues on appeal that ACMC conspired with Oak Lawn police to unlawfully arrest her, in her complaint she alleged that the police arrested her only because ACMC lied to them that she was trespassing. Likewise, though she now argues generally that ACMC conspired with DCFS, in her complaint she actually alleged that ACMC took employment actions against her only because DCFS staff lied to the ACMC defendants. These facts undermine her claim on appeal that the defendants conspired with these state actors.

Dr. Shelton also argues that the district court improperly dismissed her §§ 1985 and 1986 claims by failing to recognize allegations in her complaint that the defendants were motivated by a class-based animus. She contends that the court overlooked her allegations that ACMC targeted her because she primarily cared for unprofitable "handicapped, abused and neglected poor [DCFS wards], minority children" and Medicaid patients.

■ However, Dr. Shelton has not stated a claim under § 1985(3) because her complaint cannot be construed to allege any racial, or otherwise class-based discriminatory motive for ACMC's actions against her. *See Green v. Benden*, 281 F.3d 661, 665 (7th Cir.2002). As the district court properly found, Dr. Shelton's failure to show a § 1985 claim is fatal to her § 1986 claim as well. *Hicks v. Resolu-*

*tion Trust Corp.*, 970 F.2d 378, 382 (7th Cir.1992).

■ Finally, Dr. Shelton generally argues that the court erred when it failed to recognize that her complaint stated a claim under § 1981. Her complaint contains no mention of her race or any allegation suggesting that defendants have acted in a racially offensive manner; she therefore failed to state a claim upon which § 1981 relief can be granted. *See Morris v. Office Max*, 89 F.3d 411, 413 (7th Cir.1996).

AFFIRMED.