**Richard J. FOWLER, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE COMPANIES, a Subsidiary of American Financial Corporation, Defendants.**

No. 86 C 3855.

United States District Court,
N.D. Illinois, E.D.

Feb. 4, 1987.

Diane P. Jackson, Diane P. Jackson & Assoc., P.C., Schaumburg, Ill., for plaintiff.

Kalvin M. Grove, Paul R. Garry, Fox & Grove, Chicago, Ill., for defendants.

### ORDER

NORGLE, District Judge.

The plaintiff, Richard Fowler, was employed as a marketing supervisor for the defendant, Great American Insurance Companies (Great American). Fowler's complaint alleges Great American discharged

him in retaliation for upholding certain provisions of the Illinois Insurance Code (Code), Ill.Rev.Stat. ch. 73 ¶ 204.1 *et seq.* Great American has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986).

While Fowler was employed as its marketing supervisor, Great American intended to close a number of insurance agencies in the Chicago area. Great American directed that an agency termination letter be prepared bearing Fowler's signature which was to be used in closing those agencies. Great American informed Fowler not to accept or renew business from the agencies targeted for closing. Contrary to his instructions, Fowler informed the agencies targeted to be closed Great American would accept business and renewals. Fowler subsequently met with an agent, who requested a "re-hab plan." Fowler recommended to Great American that the plan for rehabilitation be accepted, but Great American summarily denied the request. Fowler further alleges he was discharged in retaliation for his conduct in these matters. He alleges his actions were in conformity with certain provisions of the Code and that his discharge violated the public policy expressed in the Illinois State Constitution, statutes, and judicial decisions.

In its motion to dismiss, Great American contends Fowler has failed to state a public policy upon which a claim of retaliatory discharge can be based. Fowler responds that the underlying legislative history, purpose, and language of the Code provisions, which he claims he was fired for upholding, provide the requisite policy foundation. The parties obviously feel it is the duty of this court to discover that history and purpose for they fail to cite to any legislative history, case law, or policy provisions of the Code and do not articulate the purpose(s) underlying the particular provisions upon which Fowler relies.

Fowler bears the burden of showing that as a matter of law there was a clearly mandated public policy which was violated by Great American when his employment was terminated. If Fowler cannot establish that element of his cause of action, his claim must be dismissed. *See, e.g., Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 88 Ill. Dec. 628, 478 N.E.2d 1354 (1985). Jurisdiction over this dispute is based upon the diverse citizenship of the parties, 28 U.S.C. § 1332, and the substantive law of Illinois applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This court's duty in a diversity case is to apply the state law that would be applied by the Illinois Supreme Court. *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759 (7th Cir.1986). Intermediate appellate court opinions are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case. *Id.* Whether Fowler has sufficiently plead the existence of a clearly mandated public policy and whether Fowler's discharge violated that policy have been clearly raised. Therefore, the court must determine what the Illinois Supreme Court would decide if faced with those issues under the facts of the present case.

The first question is whether Fowler has shown the existence of a "clearly mandated public policy." *See Barr v. Kelso-Burnett,* 106 Ill.2d 520, 526, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985). Fowler claims his discharge violated various provisions of the Code. Mere recitation of statutory provisions in a complaint, however, is insufficient to give rise to a retaliatory discharge claim under Illinois law. *Id.* at 527, 88 Ill.Dec. at 631, 478 N.E.2d at 1357. The public policy underlying a statutory provision is found by examining the history, purpose, language and effect of the provisions. *Id.* As indicated above, Fowler has provided nothing in that regard, except his conclusory and vague statements concerning the public policy underlying the provisions on which he relies. He states in his response:

> ... the underlying legislative history, purpose and language of said statutory provisions provide the requisite public policy foundation and, the violation of these statutory provisions gives rise to a cause of action in retaliatory discharge. Surely, each citizen is affected by statutes requiring us to maintain certain insurance coverage for our vehicles and case law determining the application of insurance provisions to property loss and loss of life. Accordingly, our legislators saw fit to enact the Illinois Insurance Code regulating the insurers who conduct business in this state.

*Plaintiff's Memorandum in Response to Defendant's Motion* at 4. Not only does this statement fail to provide the court with a meaningful basis for determining the public policy underlying the provisions upon which Fowler relies, it also indicates a basic misconception concerning conduct which will trigger liability under retaliatory discharge. Violations of the Code in themselves cannot form the basis for a retaliatory discharge claim. It is only employee conduct which furthers the policy underlying those provisions which is protected from an employer's retaliatory behavior. This misconception is further evidenced in the very provisions of the Code upon which Fowler relies.

Fowler cites to two provisions of the Code which are of doubtful application to the facts of his case. Section 502.2 of the Code, Ill.Rev.Stat. ch. 73, ¶ 1065.49–2 (1986 Supp.), relates to termination reports which must be filed with the Director of Insurance when an insurance company terminates an agency contract. Fowler has not alleged, however, that Great American failed to file such reports, that he was discharged for attempting to file them, or that he was discharged for reporting Great American's failure to file them with an appropriate agency. Similarly, Section 505.1 of the Code, Ill.Rev.Stat. ch. 73, ¶ 1065.52–1 (1986 Supp.), relates to license suspension and subsection (1) of that section permits suspension when a licensee has wilfully violated any provision of the Code. *Id.* at ¶ 1065.52–1. Presumably, Fowler is alleging Great American violated this section when it refused to accept the proposed rehab plan and when it told Fowler not to accept or renew business from agents targeted to be closed. Even if Great American had violated the section, however, this violation, in itself, would not form the basis for Fowler's claim of retaliatory discharge. The tort of retaliatory discharge was not intended to serve as a substitute means for enforcement of the Code or any other law. It was intended to neutralize the power potentially available to employers to frustrate the state policies underlying those laws. *See Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 129, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981) (unchecked employer power presents a distinct threat to public policy). Therefore, the foregoing provisions cited by the plaintiff can only be relevant to his case insofar as they elucidate Illinois public policy.

Fowler's reference to the Code provisions relating to pre-termination procedures are more to the point. Section 141.02 of the Code, Ill.Rev.Stat. ch. 73 ¶ 753.02, sets forth the procedures insurance companies must follow in terminating contracts with independent insurance agents. Subsection (3) of that section provides that such contracts shall not be terminated un-

less 180 days prior written notice has been provided to the independent insurance agent. *Id.* at ¶ 753.02(3). Subsection (4) provides that the terminating company shall permit renewal or extension of all policies written by the independent agent for one policy term or a period of one year, whichever is sooner, following the date of termination, if the policies meet the insurers underwriting standards. *Id.* ¶ 753.-02(4). Subsection (2) provides that "in an effort to avoid termination, the company *may* endeavor to reach mutual agreement on a written plan for rehabilitation for a period of time agreed by them." *Id.* at ¶ 753.02(2) (emphasis added).

Plaintiff claims he was discharged for engaging in conduct which served to uphold these code provisions. Fowler's act of informing the agents that Great American would accept and renew business was consistent with subsection (4) and his effort to gain Great American's approval of a rehabilitation program for a targeted agent was consistent with subsection (2). It can be reasonably inferred from the complaint that, in both instances, the agents had received notice of their termination, thus activating those provisions.

The language of the pre-termination procedure provisions of the Code evince a public policy to protect insureds against abrupt termination of their insurance coverage. The Code section immediately preceding those sections confirms that the provisions were meant to avoid the termination of insurance policies solely on the ground that a company's contract with an agent, through whom an insured obtained the policies, has been terminated. *Id.* at ¶ 753.01. The Code was passed by the Illinois legislature in pursuance of a public policy that regulation, control, and supervision of the insurance business is warranted because such business affects the public interest. *People ex rel. Barber v. Hargreaves*, 303 Ill.App. 387, 25 N.E.2d 416 (1940). Insurance laws are regulatory in nature and are an exercise of the state's police power. *Burton v. Aetna Life Ins. Co.*, 229 Ill.App. 517 (1924). The purpose of the insurance regulatory laws is to secure the insured

against insurance corporations not fully able to meet their obligations, *Integrity Mutual Insurance Co. v. Boys*, 293 Ill. 307, 127 N.E. 748 (1920), and the pre-termination provisions obviously further that purpose. The question is whether the Illinois Supreme Court, if presented with the facts of this case, would hold that the public policy underlying the provisions of the Code in general, and the pre-termination provisions in particular, would support a cause of action for retaliatory discharge. Our analysis of the Illinois precedents has convinced this court that the Illinois Supreme Court would find the Code insufficient to establish a clear mandate of public policy.

Illinois first recognized the tort of retaliatory discharge in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979). The *Kelsay* court held an employee stated a cause of action against her employer for allegedly discharging her in retaliation for filing a worker's compensation claim. *Id.* at 181, 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court stressed the fundamental purpose of Illinois' Workers Compensation Act to provide prompt and equitable compensation for employee injuries. *Id.* at 181–82, 23 Ill.Dec. at 562, 384 N.E.2d at 356. The court also discussed the employer-employee mutual rescission of rights involved in the administration of the act and concluded that providing efficient remedies for the protection of employees promoted the general welfare of the state. *Id.*, at 181–82, 23 Ill.Dec. at 562–63, 384 N.E.2d at 356–57. Specifically, the court found the act embraced "the important public policy that compensation should be available to injured workers." *Id.* The court emphasized that the workers compensation scheme would be seriously undermined if employers could terminate an employee merely for exercising his statutory right to seek compensation under the Act. *Id.* at 182, 23 Ill.Dec. at 563, 384 N.E.2d at 357.

The Illinois Supreme Court's next pronouncement on the tort of retaliatory discharge appears in *Palmateer v. Interna-*

*tional Harvester Co.*, 85 Ill.2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876 (1981). The *Palmateer* court held an employee stated a cause of action against his employer for allegedly discharging him in retaliation for supplying information to a local law-enforcement agency concerning possible criminal conduct on the part of a co-employee and for agreeing to further cooperate with the investigation and prosecution of the employee. *Id.* at 127, 52 Ill.Dec. at 17, 421 N.E.2d 880. Although the court in *Palmateer* stated "[t]here is no precise definition of the term" a survey of cases from other jurisdictions caused it to conclude that a clear mandate of public policy must "strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id.* at 130–132, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79. Applying its reasoning to the facts of the case before it, the *Palmateer* court specifically found there was "no public policy more basic, more implicit in the concept of ordered liberty [citation omitted] than the enforcement of a State's criminal Code." *Id.*

The Illinois Supreme Court once again addressed the public policy issue in *Barr v. Kelso-Burnett Co.*, 106 Ill.2d 520, 88 Ill. Dec. 628, 478 N.E.2d 1354 (1985). In *Barr,* the plaintiffs alleged they were discharged in violation of various federal and state constitutional and statutory rights, including freedom of speech, no deprivation of property without due process of law, equal protection, invasion of privacy, and peaceable assembly. The *Barr* court found the public policy clearly mandated by these provisions was that the power of government should be limited. *Id.* at 526–27, 88 Ill.Dec. at 631, 478 N.E.2d at 1357. The court stated the provisions mandated nothing concerning private individuals, including private individuals in the employer-employee relationship. *Id.* The court concluded the complaint failed to state a cause of action because the public policy invoked by the plaintiffs in support of their retaliatory discharge claim did not restrict private individuals. *Id.* at 528, 88 Ill.Dec. at 631, 478 N.E.2d at 1357.

The Illinois Supreme Court again addressed the public policy issue in *Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985). The public policy at issue in *Wheeler* was the control of radioactive material under federal regulatory laws. *Id.* at 506, 92 Ill.Dec. 561, 485 N.E.2d 372. In upholding the employees cause of action the *Wheeler* court stated "the protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence." *Id.* at 511, 92 Ill.Dec. at 566, 495 N.E.2d at 377.

This court does not discern from its review of the Illinois decisions a clear trend toward expansion or limitation of the retaliatory discharge tort. The Illinois Supreme Court recently rejected an attempt to characterize its decisions as embracing an expansive view of the tort, *Barr v. Kelso-Burnett*, 106 Ill.2d 520, 525, 88 Ill.Dec. 628, 630, 478 N.E.2d 1354, 1356 (1985) (court has not rejected a narrow interpretation of the tort nor does court strongly support its expansion); however, it has not enunciated a clear principle of limitation. The decisions indicate that the public policies which will support a retaliatory discharge claim must relate to the core of the citizenry's rights, duties and responsibilities. *See, e.g., Palmateer*, 85 Ill.2d at 132, 52 Ill.Dec. at 16, 421 N.E.2d at 879 (enforcement of criminal code is "fundamental"). In *Kelsay*, it was the statutory right of employees to bring workers' compensation claims against their employers; in *Palmateer*, it was the duty and responsibility of all citizens to cooperate with law enforcement; and in *Wheeler* it was the right to refuse to work in an environment declared unsafe under the federal nuclear regulatory laws.

Laws create rights and concomitant duties and responsibilities. To say that some rights lie at the core while others lie at the edge or that some duties are fundamental while others are less than essential contributes little to reasoned analysis. The very use of such qualifying adjectives, on the other hand, does suggest that a hierarchy of social values is contemplated. Al-

though the opinions fall short of articulating a formula for determining where on this hierarchy of social values any particular public policy should lie, the decisions reveal that some deserve a higher placement than others.

Several of the public policies which the Illinois Supreme Court has held capable of forming the basis for a retaliatory discharge claim were designed to enhance public safety. The public policy at issue in *Wheeler*, for example, was designed to protect the public against those injuries associated with improper use of radioactive materials. In *Palmateer*, the public policy was designed to protect citizens from criminal activity. The public policies associated with social and economic regulation, on the other hand, are less likely to be held sufficient to support a retaliatory discharge claim. The *Barr* court, for example, dismissed a claim based upon alleged employer interference with the exercise of various constitutional rights, including freedom of speech and assembly. The court characterized the public policy underlying these basic constitutional guarantees as one designed to limit governmental, as opposed to private individual conduct. No one can deny the importance of free speech in preserving the very fabric of our nation; however, the policy is essentially social and political in nature. In sum, the policies underlying some laws are designed principally to promote public safety, while the policies underlying other laws are designed to promote a more efficient economic structure and democratic social order.

The public policy underlying Illinois' Insurance Code is designed to achieve economic security for Illinois citizens and to encourage their greater social responsibility. Facilitating the citizenry's maintenance of insurance coverage through regulation of the insurance industry is not directly related to public safety. Although many forms of insurance protect citizens against losses associated with property damage and personal injury (losses which themselves are more associated with individual, rather than public safety), other types of insurance, life insurance for example, do not. More importantly, the citizenry's maintenance of insurance coverage does not serve to reduce the risks covered. Maintaining automobile insurance, for example, does not prevent accidents. The maintenance of insurance coverage does, on the other hand, improve economic security and social responsibility. In sum, this court judiciously predicts that the Illinois Supreme Court would dismiss Fowler's claim because the public policy underlying Illinois' Insurance Code is not sufficiently tied to the enhancement of public safety, but is more associated with the state's socio-economic objectives.

More careful scrutiny of the conduct which Fowler alleges he was fired for engaging in reveals another reason for dismissing his claim. It is axiomatic that Great American's discharge of Fowler could not have violated the public policy underlying the Code unless Fowler's conduct in some way helped to effectuate that policy. There are basically three forms of employee conduct which can be said to help effectuate public policy. First, an employee may directly assist the state in carrying out its policies. Commonly referred to as "whistle blowing", this type of conduct bears the most direct relationship to public policy and is therefore, entitled to the greatest protection. *See, e.g., Palmateer*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (cooperation with law enforcement). Second, an employee may refuse to engage in conduct requested by the employer which violates public policy. *See, e.g., Wheeler*, 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (refusal to operate unsafe machinery). Finally, an employee may engage in conduct which is consistent with public policy, but which contravenes the expressed wishes of the employer.

Fowlers' conduct is of the latter type. He does not allege he was fired for attempting to report Great American's alleged violations of the Code to the appropriate authority. Nor does he allege that he was fired for refusing to obey an order to violate the provisions of the Code. Fowler merely alleges he engaged in con-

duct (writing the letter to the agents) which was consistent with the Code, but which contravened the express orders of his superiors. The Illinois Supreme Court has never addressed the distinction between disobedience to an order which violates public policy and engaging in conduct which is consistent with public policy. The court predicts that if presented with the distinction, the court would find that engaging in conduct which is alleged to be consistent with public policy but which contravenes the express orders of an employer is entitled to the least protection. *Accord Bushko v. Miller Brewing Co.*, 134 Wis.2d 136, 396 N.W.2d 167 (1986) (court held employee conduct consistent with public policy, as opposed to employee refusal to obey a command to violate public policy, was insufficient to form basis of retaliatory discharge claim).

The distinction between these latter two forms of conduct may not always be clear. Failure to distinguish them, however, could lead to disastrous results. Encouraging employees to engage in unilateral action in contravention of their employers' directions would not only disrupt employer-employee relations, it might also frustrate the very policies which the retaliatory discharge tort was designed to promote. For example, the employee's conduct in *Wheeler* would certainly be entitled to less protection if he had attempted to adjust the machinery to conform to his view of what was mandated by the nuclear regulatory laws rather than simply refusing to work on the machine. Combined with an expansive view of the types of public policy which can form the basis for the tort, the protection of such conduct would upset the delicate balance between the interests of society, employees, and employers which the tort of retaliatory discharge was designed to maintain. *Palmateer*, 85 Ill.2d at 129, 52 Ill.Dec. at 15, 421 N.E.2d at 878.

Another factor which the Illinois Supreme Court, at least implicitly, considers in determining whether a plaintiff has stated a claim for retaliatory discharge is the availability of an adequate alternative remedy, *Barr*, 106 Ill.2d at 526–27, 88 Ill.Dec. at 631, 478 N.E.2d at 1357 (court discusses availability of remedy under Human Rights Act). *Accord Busa v. Barnes*, 646 F.Supp. 615, 617 (N.D.Ill.1986). In the present case, Fowler has recited in his complaint the sections of the Code which provide for license revocation when insurance companies violate its provisions. Although reporting Great American's conduct to the Department of Insurance might have also resulted in the loss of his job, Fowler was not the person harmed by Great American's conduct in the first instance. The persons who may have had their insurance coverage wrongfully terminated were directly harmed, not Fowler. To the extent that Fowler was harmed by Great American's conduct in refusing to renew insurance policies, his remedy of reporting that conduct to the Department of Insurance was adequate and available.

The court's opinion in this case should not be taken to mean that the factors it considered in reaching its decision are the only factors or that the factors considered should be given the same weight in every fact situation. For example, it could be argued that the public policy at issue in *Kelsay* was designed more to restructure the socio-economic structure of Illinois than to promote public safety. Indeed, it could be argued that Illinois' Workers Compensation law is an insurance program similar to those offered by private companies. However, the analogy would be far from perfect. In the workers compensation context, the state not only provides the insurance, it also is responsible for establishing the liability which the insurance is designed to cover. Also, Illinois has not shown the same willingness to become insurer, investigator, adjudicator, and enforcer in the context of private insurance. Instead, Illinois has left the provision of private insurance to private enterprise and merely regulates private insurance companies through the Code. Furthermore, the whistle-blowing nature of the *Kelsay* employee's conduct and his lack of an alternative remedy could also serve as the basis of the decision.

Fowler's complaint alleges he was discharged for upholding certain provisions of Illinois' Insurance Code. Not all conduct which is consistent with law is protected by the tort of retaliatory discharge. As one Illinois court pointed out, "the election to pursue a certain course of conduct guaranteed by statute or federal and state constitutions is not always without adverse consequences." *Pleasure Driveway & Park District v. Jones*, 51 Ill.App.3d 182, 189–90, 9 Ill.Dec. 677, 673, 367 N.E.2d 111, 117 (1977). Fowler's conduct in this case constituted such an adverse election.

In sum, the court concludes Fowler has failed to allege his employment was anything other than at-will. The public policy upon which he relies would not be recognized by the Illinois Supreme Court as supporting a retaliatory discharge claim. Further, Fowler's conduct is of a type entitled to the least amount of protection from retaliatory employer behavior. Therefore, his complaint must be dismissed.

IT IS SO ORDERED.