**Dale LONG, Plaintiff–Appellant,**

v.

**COMMERCIAL CARRIERS, INCORPORATED, Defendant–Appellee.**

No. 94–3025.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1995.

Decided June 16, 1995.

Robin B. Potter, Marjorie A. Herceg (argued), Potter & Schaffner, Chicago, IL, for plaintiff-appellant.

John T. Schriver, Nancy G. Ross (argued), Scott Martin, McDermott, Will & Emery, Chicago, IL, for defendant-appellee.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Dale Long (Long) is a former truck driver for Commercial Carriers Inc. (CCI). Long contested the lease agreement governing his employment with CCI on the grounds that it violated Interstate Commerce Commission (ICC) regulations. He refused to sign a revised lease for the same reason. Because he refused to sign the proffered leases and could not continue to drive without an existing lease agreement, CCI fired Long. In response, Long filed this claim of retaliatory discharge. The Magistrate Judge found that Long did not state a viable claim for retaliatory discharge under Illinois law. We affirm.

## I. FACTS

CCI is a Michigan trucking business engaged in transporting automobiles and trucks. As a member of the trucking industry, CCI is regulated by the ICC. Under ICC regulations, carriers must receive certification to engage in commercial interstate motor transport. Rather than apply for such certification, small operators lease their equipment and services to larger, certified carriers like CCI. Long is one such owner-operator. He owns his tractor and has leased it and his services as a driver to CCI since 1984.

Lease agreements between owner-operators and their employers are governed by the ICC. Since at least 1984, Long and all other owner-operators at CCI's West Chicago terminal worked under the same lease agreement. However, in 1987 Long and other owner-operators complained to the ICC that CCI was taking unauthorized deductions from their paychecks and that their lease agreement did not comply with ICC regula-

tions. As a result of this complaint, CCI entered into a settlement agreement with the ICC, agreeing to revise its equipment leases to comply with ICC regulations.

Pursuant to this settlement agreement, CCI announced that it was canceling its existing leases and that owner-operators who wanted to keep driving for CCI would have to sign a new, revised lease (the first revised lease) by December 31, 1988. Long and other owner-operators complained again, asserting that the first revised lease still contained violations of ICC regulations. On November 22, 1988, the ICC notified CCI that the first revised lease did not comply with either leasing regulations or the consent agreement. R.O.A., Exh. 8. Nevertheless, CCI continued to represent to its owner-operators that the first revised lease had been approved by the ICC. R.O.A., Exh. 13, 14 (Letters of November 22, 1988, and December 1, 1988). The ICC sent CCI a more detailed letter on December 29, 1988, spelling out the specific violations in the first revised lease and demanding that CCI correct any misrepresentations that the ICC had approved the first revised lease. R.O.A., Exh. 9.

Long and other owner-operators refused to sign the first revised lease because of its continued violations. However, ICC regulations also require that owner-operators have a valid lease in effect in order to drive. Thus, on January 1, 1989, Long and the other owner-operators who had not signed the first revised lease were put on what CCI termed "voluntary equipment layoff." Long has received no salary or benefits from CCI since January 1, 1989. All the owner-operators except Long eventually signed the first revised lease, despite the fact that its regulatory violations were still not resolved. Long refused to sign, citing his objection to the violations in the lease.

Even after it was signed by all the owner-operators except Long and put into effect, the first revised lease still contained violations. CCI continued to negotiate changes to the lease with the owner-operators and the ICC. In April, 1989, CCI entered into yet another settlement agreement with the ICC, paid a fine for its violations, and issued a new, revised lease (the second revised lease) to replace the first revised lease. CCI asserts that it mailed the second revised lease to each owner-operator at his or her home. Long claims that he never received this mailing. However, Long did receive a registered letter from CCI on May 19, 1989, after the deadline for signing the second revised lease. The letter informed him that his decision not to sign a new lease constituted a "voluntary quit" and that the company was removing him from the seniority list. Arb.Op. at 4.

Long now brings this action for retaliatory discharge, claiming that CCI fired him for protesting the lease violations. The Magistrate Judge granted summary judgment for CCI, finding that Long had not presented sufficient evidence of the breach of a clearly mandated public policy to support a retaliatory discharge claim.

## II. DISCUSSION

■ Illinois follows the common-law doctrine that an employer can generally discharge an employee-at-will for any reason. *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354 (1985). The tort of retaliatory discharge is a narrow exception to that rule. *Id.* It permits an employee "who is dismissed in violation of a clearly mandated public policy to bring a cause of action for retaliatory discharge." *Belline v. K–Mart Corp.*, 940 F.2d 184, 186 (7th Cir.1991).

■ To establish a claim of retaliatory discharge, Long must prove that he was 1) discharged, 2) in retaliation for his activities and 3) that the discharge violates a clear mandate of public policy. *Belline*, 940 F.2d at 186. Long claims that he was discharged for protesting the regulatory violations in the proposed leases. CCI argues that, because signing a lease was a condition of employment, not signing it constitutes a voluntary resignation. However, as the Magistrate Judge recognized, if Long was forced into resignation as the only alternative to violating a clearly mandated public policy, his resignation would be involuntary and could give rise to a cause of action for retaliatory discharge. Mem.Op. at 8.

In evaluating a grant of summary judgment for a defendant, we must view "all the evidence in the light most favorable to the plaintiff." *Cuddington v. Northern Indiana Public Service Co.*, 33 F.3d 813, 815 (7th Cir.1994). Therefore, while we have some questions about why Long did not sign the second revised lease and his claim that he never received or heard about it, we will assume for this discussion that Long was in fact discharged[1] and that the discharge was in retaliation for his protests over the leases. Even with these assumptions, however, Long must still establish that his discharge violated a clearly mandated public policy of Illinois.

The Illinois Supreme Court has defined a "clear mandate of public policy" as "a matter [which] strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15–16, 421 N.E.2d 876, 878–9 (1981). Further, "[t]he cause of action is allowed where the public policy is clear, but is denied where it is equally clear that only private interests are at stake." *Id.* 52 Ill.Dec. at 16, 421 N.E.2d at 879.

Actions for retaliatory discharge have been allowed under this standard where an employee was fired because he agreed to cooperate with law enforcement investigations of the criminal conduct of his coworker, *Palmateer*, 52 Ill.Dec. 13, 421 N.E.2d 876, where an employee was discharged for disclosing criminal and civil violations of federal securities laws, *Johnson v. World Color Press*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (1986), where an employee was fired for reporting theft by a fellow employee, *Belline*, 940 F.2d 184 (7th Cir.1991), and where an employee was fired for filing a workers' compensation claim, *Kelsay v. Motorola*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978).

However, retaliatory discharge claims have *not* been allowed where workers were fired for "inform[ing] fellow employees of layoff procedures being utilized," *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 629, 478 N.E.2d 1354, 1355 (1985), where a city manager was fired by the mayor for refusing to perform his official duties improperly for the political benefit of the mayor, *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991), where an employee was discharged after voicing concern that a co-employer was not certified pursuant to a city ordinance, *Gould v. Campbell's Ambulance Service*, 111 Ill.2d 54, 94 Ill.Dec. 746, 488 N.E.2d 993 (1986), and where an employee was fired for refusing to lie to an investigator and an attorney in an entirely internal city investigation, *Lambert v. City of Lake Forest*, 186 Ill. App.3d 937, 134 Ill.Dec. 709, 542 N.E.2d 1216 (1989).

As these examples illustrate, many actions that resemble whistle-blowing do not support a claim for retaliatory discharge. Only where "the court recognized that an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner" has a claim for retaliatory discharge been allowed. *Fellhauer*, 154 Ill.Dec. at 655, 568 N.E.2d at 876. Certainly any employer can to a degree frustrate public policies by the threat of discharge, but only when such terminations would have a wide reaching effect on the public at large and involve an important public policy that goes "to the heart of a citizen's social rights, duties, and responsibilities," do they reach the level of the narrowly crafted retaliatory discharge exception. *Id., see also Hicks v. Resolution Trust Corp.*, 970 F.2d 378 (7th Cir.1992); *Lambert*, 134 Ill.Dec. at 714, 542 N.E.2d at 1221.

---

1. CCI argues that Long was never discharged. It contends that he remained an employee until he refused to sign the second revised lease (which finally complied with all ICC regulations). Until that time, CCI argues, Long was on "voluntary equipment layoff," which allowed him to remain on the seniority list, attend company meetings and file grievances under the labor contract. Thus, it claims, he was never discharged, nor was he forced to resign for not signing a lease that violated ICC regulations. Long argues that he was discharged when he was put on "voluntary equipment layoff" because he received no salary or benefits after that time. For the purposes of summary judgment, we will assume that Long was discharged as he claims when he refused to sign the first revised lease.

■ To support a retaliatory discharge claim, the regulations Long contests must somehow involve the clearly mandated public policy of Illinois. Long claims that the leases were "illegal" and that signing them violates the basic public policy of law enforcement. CCI, on the other hand, argues that the leases violated only regulatory requirements dealing with private contractual matters which do not implicate the public policy of Illinois. To resolve this dispute, we look to the actual regulatory violations Long protested in order to evaluate their impact on the citizens and public policy of Illinois.

The violations in the first revised lease involved issues of insurance, deductions from employee paychecks and allocation of costs. Specifically, the ICC notified CCI that its first revised lease violated both ICC regulations and the consent agreement by not specifying the compensation for loading and unloading trucks, the amount the lessor would receive for the sale, refund or credit of base plates, which party would be responsible for permits, that CCI would assume the risks and costs of fines for overweight or oversize trailers, that CCI would have exclusive possession of the leased equipment and that CCI would provide a copy of its insurance policies to the lessor. The ICC also warned CCI that its practices of not providing documentation of actual freight bills to the lessors, deducting insurance premiums and interest charges from paychecks without authorization in the lease and failing to pay lessors within the mandated 15 days also violated ICC regulations and the consent agreement.

All of these infractions were violations of agency regulations, not statutory law. Further, they were regulatory violations that involved contractual issues between the employer and the employee. The regulations violated did not involve issues of the health or safety of the general public, or even of the drivers. They involved instead the allocation of expenses, responsibility for permits and insurance payments, and compensation for the drivers.

This court's recent case dealing with a somewhat analogous regulatory violation is especially instructive here. In *Hicks v. Resolution Trust Corp.*, 970 F.2d 378 (7th Cir. 1992), an employee was fired for reporting to the Federal Home Loan Bank Board that his employer was violating federal Community Reinvestment Act regulations. In evaluating his resulting claim for retaliatory discharge, this court noted that "Illinois courts have repeatedly expressed their reluctance to expand the tort of retaliatory discharge." *Hicks*, 970 F.2d at 381. The Bank in *Hicks* had failed to make investments in minority neighborhood projects, was not marketing its services to minority groups and was not advertising in areas that would encourage minority involvement—all violations of the Community Investment Act regulations. *Id.* at 380. This court concluded, however, that the Act's purpose was "financial in its nature—to encourage banks and other lending institutions to help meet the credit needs of the local communities in which they are chartered." *Id.* at 382. As a result, we determined that the Community Reinvestment Act regulations did not bear on a policy which directly implicated an Illinois citizen's rights, duties or health. *Id.* at 380.

■ Long and Hicks were both reporting the violation of federal regulations. These violations were investigated in both cases by federal examiners. Yet while these acts may have resembled whistle-blowing, they do not necessarily go to the "heart of the citizen's social rights, duties and responsibilities." *Palmateer*, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–9; *Hicks*, 970 F.2d at 381. A claim for retaliatory discharge *could* rest on a dismissal for reporting the violation of federal regulations, but only if those regulations involved the health or safety of individuals, or other interests deemed crucial to public policy. When, as here, the violated regulations deal primarily with certain non-crucial financial and contractual interests of the employee, they do not rise to the level required for a retaliatory discharge claim.

Long was not asked to perform an illegal act, or to cover up a crime. Further, regulations required CCI to have a signed lease agreement with Long in order to allow Long to drive. Thus forcing Long to sign a lease in order to drive, while negotiations continued with CCI and the ICC, did not require Long's participation in an act so inimical to

public policy as to support a claim for retaliatory discharge.

For these reasons, the decision of the Magistrate Judge is

AFFIRMED.